**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**ALISON WILLIAMS,**                                                        **PLAINTIFF,**

**VS.**                              **CIVIL ACTION NO. 2:10CV110-P-V**

**DESOTO COUNTY, MISSISSIPPI and
SHERIFF BILL RASCO, Individually and
in His Official Capacity as Sheriff of DeSoto
County,**                                                                      **DEFENDANTS.**

## MEMORANDUM OPINION

This matter comes before the court upon the defendants' motion for summary judgment [docket number 43]. After due consideration of the motion and the responses filed thereto, the court is prepared to rule.

### I. FACTUAL BACKGROUND

Bill Rasco took office as Sheriff of DeSoto County, Mississippi in December 2007. Shortly thereafter in January 2008 Sheriff Rasco hired Alison Williams as a patrol officer. Sheriff Rasco then fired Officer Williams on January 14, 2008 for an incident of misconduct. After a meeting between them, Sheriff Rasco rehired Officer Williams on June 28, 2008 as patrol officer but she was placed on 12 months probation.

On or about November 26, 2008 Sheriff Rasco terminated Officer Williams for failing her shooting qualification test held two days prior on November 24, 2008. Her scores for three attempts were 74, 76, and 79. The minimum score was 80. On the same day that Officer Williams failed the shooting test, five males failed as well. Three of them, Bailiffs Bell, Norman, and Stout, were terminated. Officer Pounders was allowed to retire in lieu of termination. Investigator Clyde Gunter, however, was not terminated and was given the opportunity to retest. It is undisputed that Mr.

Gunter had been hospitalized the night before and was still medicated when he took his test.

Officer Williams filed the instant lawsuit on July 1, 2010 alleging that she was terminated because of her gender in violation of Title VII, 42 U.S.C. §2000e *et seq.* and the Equal Protection Clause via §1983.

The defendants argue in the instant motion for summary judgment that the plaintiff's gender discrimination claims must fail as a matter of law because she cannot demonstrate a comparator who was treated more favorably in "nearly identical" circumstances as required for a *prima facie* gender discrimination case.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d l026, l031 (5th Cir. l982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. l981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l211, l213 (5th Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue

must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. Gender discrimination standards**

Unlawful gender discrimination occurs when gender "was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. §2000e-2(m). The analysis of whether the defendants engaged in unlawful gender discrimination under Title VII or Section 1983 is essentially the same.

The well-known burden shifting discrimination analysis begins with determining whether the plaintiff can show a *prima facie* case of gender discrimination, *i.e.*, that (1) she is a member of a protected group; (2) she was qualified to perform the job; (3) she suffered an adverse employment action; and (4) someone similarly situated was treated more favorably. If the plaintiff meets her burden in establishing a *prima facie* case, the burden then shifts to the defendant to proffer a legitimate, non-discriminatory reason for the adverse employment action. If the defendant meets this burden, the burden of proof then returns to the plaintiff to prove that the defendant's proffered reason was a pretext to discrimination.

The defendant maintains that the plaintiff cannot establish a *prima facie* case because she cannot show that someone similarly situated who was not a member of her protected class was treated more favorably, *i.e.*, that a man who failed the shooting test was not fired. The plaintiff argues that she has at least two proper comparators: Clyde Gunter, who failed the test and was allowed to retest, and Ray Pitts, who failed the test and was allowed to retire instead of being terminated. The defendants argue that none of the comparators asserted by the plaintiff had circumstances "nearly identical" to those of the plaintiff and therefore fail to meet the *prima facie*

requirement.

Having considered the standards discussed by the Fifth Circuit in *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 260-61 (5th Cir. 2009) and the parties arguments, the court concludes that the plaintiff has failed to demonstrate that the circumstances involving any of her proffered comparators were "nearly identical" to her own.

Regarding *Lee*'s requirement that "[t]he employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories," 574 F.3d at 260, the employees being compared more or less hold the same job or responsibilities since they all are law enforcement officers and all are required to pass a firearms test and Sheriff Rasco determined everyone's employment status. However, the comparators did not have comparable violation histories with the plaintiff. First, the plaintiff was on 12-months probation after having been fired on January 14, 2008 for an incident of misconduct and rehired on June 28, 2008 by Sheriff Rasco. Neither Clyde Gunter nor Ray Pitts were on probation. Second, it is undisputed that Mr. Gunter has previous scores of 95 while the plaintiff never had higher than 79. Third, Mr. Gunter had a longer record of passing scores. Fourth, neither Mr. Gunter nor Mr. Pitts were hired, fired, and re-hired in such a short time span both in terms of the period between each of the three events and the period between the three events and the failure of the firearms test resulting in termination.

The Court in *Lee* went on to say that the fourth critical factor is that "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proferred comparators who allegedly drew dissimilar employment decisions. If the 'difference between the

5

plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis." 574 F.3d at 260 (emphasis in original; internal citations omitted).

The differences between the plaintiff's circumstances and those of Ray Pitts are clear. First, though Mr. Pitts was allowed to retire in lieu of termination, it is not alleged that he would not have been terminated had he not asked for the retirement option which was made available to him no doubt because he had a longer service record than the plaintiff. Nevertheless, Mr. Pitts ceased to be employed with the Sheriff's Department as was the case with the plaintiff. Second, Mr. Pitts was not on probation and the plaintiff was.

In addition to those mentioned above, the differences between the plaintiff's circumstances and those of Clyde Gunter are readily apparent. First and foremost, it is undisputed that Mr. Gunter had been hospitalized the night before the firearms test and that he was on medication. It is likewise undisputed that the test instructors clearly detected the effects of medication on Mr. Gunter. Though the plaintiff alleges that Sheriff Rasco knew that she had responded to a gruesome automobile collision the night before, it is not alleged that anyone at the range knew of this or that the plaintiff was visibly affected by this experience. Nor does the plaintiff allege that she made her nervousness from the night before known to the instructors. Second, it is undisputed that Sheriff Rasco was counseled to allow Mr. Gunter to retake the test based on a legal opinion that the Family and Medical Leave Act might be applicable. Though it is disputed whether FMLA was in fact applicable, it remains undisputed that the Sheriff received legal counsel not to terminate Mr. Gunter while the same cannot be said regarding the plaintiff. Third, it bears repeating that unlike the plaintiff, Mr.

Gunter had not been hired, fired, rehired in less than a two-year period, nor was he on probation when he failed to pass his shooting test.

### III. CONCLUSION

For the reasons discussed above, the court concludes that the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from Sheriff Rasco. Accordingly, the plaintiff cannot demonstrate a *prima facie* case of gender discrimination and therefore summary judgment should be granted. A Final Judgment shall issue forthwith,

**THIS DAY** of August 24th , 2011.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE